**INWOOD CONSTRUCTION COMPANY et al., Appellants,**

**v.**

**HUNTINGTON CORPORATION, Appellee.**

No. 7665.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 28, 1965.

On Motion for New Trial Dec. 7, 1965.

Rehearing Denied Dec. 28, 1965.

Sol Goodell, Thompson, Knight, Wright & Simmons, Edward C. Fritz, Fritz, Vinson & Stevens, Dallas, for appellants.

Spencer Carver, Biggers, Baker, Lloyd & Carver, Dallas, for appellee.

CHADICK, Chief Justice.

This is a suit for damages occasioned by the breach of a construction contract. The judgment entered in the trial court is reversed and the case remanded for retrial.

Huntington Corporation and Inwood Construction Company, a corporation, entered into a cost-plus contract that obligated Inwood to construct buildings and facilities, including paved parking areas, at sites ties, including paved parkink areas, at sites in Texarkana, Marshall, and Vernon, Texas, under development as shopping centers. This action is concerned only with the paving at Texarkana and Marshall. Huntington as plaintiff sued Inwood, and that company's performance bond surety, Trinity Universal Insurance Company, as defendants. The trial petition alleged that the paving at Texarkana and Marshall was not constructed in accordance with plans and specifications, and specified fourteen particulars in which the contract was violated.

Huntington's petition alleged that notice was served upon Inwood of "the complete failure of the paving to meet plans and specifications at the Marshall and Texarkana sites; of the absence in the paving at the Marshall and Texarkana sites of good and workmanlike performance; of the failure of Inwood as contractor to furnish its best skill and judgment in the paving at Marshall and Texarkana sites; of the failure of Inwood to furnish efficient superintendence during the paving at the Marshall and Texarkana sites; of the failure of Inwood to secure the paving work's execution in the best and soundest way and at the most expeditious and economical manner consistent with the interest of Huntington Corporation; and the violation by the defendant Inwood of the trust and confidence placed in Inwood under the terms of the contract." Coupled with the quoted notice is the further allegation that demand was made upon Inwood to reimburse Huntington $52,383.36, the amount Huntington paid for the two paving jobs, less credits aggregating $7,733.12 that Huntington acknowledged as due to Inwood.

The jury determined by answer to the several special issues submitted to it that Inwood failed to either fully or substantially "construct and deliver" asphaltic concrete and flexible base as specified in the contract at the Texarkana site. It found

the reasonable cost of remedying defects and omissions that would put the paving at the Texarkana project into conformity with specifications would total $17,460.00. The jury's findings referable to the Marshall job were similar except a finding that Inwood substantially performed its contract to construct and deliver asphaltic concrete as specified and that the reasonable cost at Marshall of remedying defects, etc., would be $34,740.00. The trial court judgment allowed Inwood a stipulated offset of $9,953.57 and awarded Huntington a recovery of $42,246.43, with interest from the judgment date.

The foregoing summary leaves unmentioned much of the record containing a transcript of 322 pages, a statement of facts in 8 volumes, an excess of 100 exhibits, with briefs in proportion. Other explanations will be added as the opinion progresses. The adequacy of the measure of damages used in submitting this case to the jury is the paramount question for decision.

The case was submitted to the jury on the theory that the appropriate measure of damage is the reasonable cost of remedying defects and omissions in the asphaltic concrete and flexible base so as to bring the paving into conformity with contractual specifications. The jury was instructed to apply this measure of damage if it found Inwood failed to fully perform its contractual obligations in every detail, and regardless of whether Inwood's performance was substantial or less than substantial. It has been recited that the jury found Inwood did not fully perform nor substantially perform except as to the asphaltic concrete at the Marshall site. The jury was not required to separately ascertain the cost of bringing the Marshall asphaltic concrete up to specifications. The concrete that the jury found to substantially conform was laid over a flexible base, which was found not to substantially conform, and became the outer surface and binding agent of the pavement. Suggestion is not made how the Marshall base might be remedied without first destroying the asphalt surface. Testi-

mony was introduced that paving as specified at both sites could be accomplished only by completely removing that constructed by Inwood and beginning anew.

No effort will be made to reconcile or choose between theories expressed by various Texas courts and those of other jurisdictions bearing upon the measure of damage problem as the Supreme Court performed that task in Hutson v. Chambless, 157 Tex. 193, 300 S.W.2d 943. The opinion in the case by Chief Justice Hickman in part says:

> "Our study of the involved record in this case has convinced us that one question of law is decisive of the character of judgment which should be rendered here, and our statement will be limited to the essential facts relevant to that question. That decisive question is the proper rule for measuring the damages for the breach of a contract to construct a house."

Further along the opinion pronounced the general rule applicable in the absence of substantial performance of a building contract in this manner, to-wit:

> "* * * It is stated by the Supreme Court of Washington in White v. Mitchell, 123 Wash. 630, 213 P. 10, 13, in this language:
>
> "'* * * Generally, where there has not been * * * substantial performance, the measure of the owner's damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract. Such a recovery would be just to both parties. It is manifest that to measure the owner's damage by the cost necessary to make the building conform to the contract would often be an injustice, because in many instances such cost would amount to almost as much as the original contract price.'

"That rule was followed in Totten v. Houghton, Tex.Civ.App., 2 S.W.2d 530,

no writ history, and authorities therein cited. It is announced in practically the same language in 9 American Jurisprudence, Building and Construction Contracts, Sec. 43, p. 33. Many authorities supporting the rule are annotated in 23 A.L.R. 1436, 38 A.L.R. 1383, and 65 A. L.R. 1298."

Huntington endeavors to justify the submission of damages as made on three grounds. These grounds will next be discussed in order.

### The Parties Contracted for A Rule of Damage.

■ Subdivision XIV of the Construction Contract reads:

"Any cost due to the negligence of the CONTRACTOR or anyone directly employed by him either for the making good of defective work, disposal of material wrongly supplied, making good of damage to property, or excess costs for material or labor, or otherwise, shall be borne by the CONTRACTOR, and the OWNER may withhold money due the CONTRACTOR to cover any such cost already paid by him as a part of the cost of the work."

This contractual provision is self-explanatory. It clearly provides that costs for making good defective work, etc., "due to the negligence" of Inwood is to be borne by Inwood. There is no pleading or finding that Inwood or its employees were negligent in the performance of the contract. Neither this provision nor any other pointed out by Huntington supports the contention.

### The Measure of Damage Rule in Hutson v. Chambless, supra, is Exclusive to the Construction of a House.

While necessarily the rule expressed in Hutson is referable to the facts of that particular case, the principle enunciated applies to the construction contracts having a similar factual background. The case es-

tablishes a precedent applicable to construction generally. Courts, 15 Tex.Jur. 2d, Sec. 131.

### Inwood Deliberately Departed from Specifications.

■ Associate Justice Norvell in his concurring opinion in Hutson directs attention to several established exceptions to the general rule under discussion. Among the exceptions mentioned is the rule of recovery governing cases of willful or intentional breach by contractor. Huntington argues that intentional departure from specification is proven as a matter of law. However, there is no pleading that Inwood willfully or intentionally defaulted. The evidence shows that Inwood subcontracted the paving to E. W. Wilson, Jr., a paving contractor. If Inwood was aware that the paving did not conform to specifications before the jobs were completed and delivered to Huntington, this court's attention has not been directed to such proof in the record. After complaint was made by Huntington to Inwood, tests were conducted and the alleged departures, omissions and deficiencies became a subject of discussion. No evidence of an intentional deviation was developed. Huntington's contention in this respect is not valid.

The appellant Inwood's points of error presenting this issue are sustained and the case is reversed.

### ON MOTION FOR REHEARING

The appellee, Huntington Corporation, has filed a motion for rehearing in which, for the first time, it is contended that Article 20, Standard Form of American Institute of Architects, Sixth Edition, 1951, governs the measure of damages to be applied in the event of a breach of the building contract. Article 20 was incorporated into the contract by reference and reads as follows, to wit:

"CORRECTION OF WORK AFTER FINAL PAYMENT—The contractor shall remedy any defects due to faulty materials or workmanship and pay for

any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final payment, or from the date of the owner's substantial usage or occupancy of the project, whichever is earlier, and in accordance with the terms of any special guarantees provided in the contract. Neither the foregoing, nor any provision in the contract documents, nor any special guarantee time limit, shall be held to limit the contractor's liability for defects, to less than the legal limit of the liability in accordance with the law of the place of building. The owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the architect subject to arbitration, notwithstanding final payment."

■ Huntington's theory of the case presented in its original brief eliminated Article 20 as a factor in this appeal. The brief dismissed the article in these words: "The title and contents regulate its application to buildings and not to site improvements separate from buildings". In a former appeal, Huntington Corporation v. Inwood Construction Company et al. (Tex.Civ. App.) 348 S.W.2d 442, W.R., N.R.E., Justice Towne Young's opinion disposed of it as a factor upon a different basis, by saying:

"* * * In the first place the allegations of plaintiff's petition being taken as true; 4 Tex.Jur.2d 308, they extend beyond the recitals of Article 20 (Correctional Work) and amount to charges of total failure of performance with respect to construction work on two of these paving sites; not confining the architect to amount or value of the correctional work as in the Clancy case, supra. And furthermore, Articles 20 and 40 must be constructed together, * * *."

The defaults in construction charged against Inwood as constituting breaches of the contract go beyond allegations of de-

fects due to faulty material or workmanship, etc., appearing within one year. The failures alleged are particularized in the original opinion. The jury was instructed to determine the degree of Inwood's performance and the cost of bringing the paving into conformity with contractual specifications, etc. The case was not tried or submitted on a theory consistent with the terms of Article 20. Huntington's motion for rehearing is overruled.

Appellants, Inwood Construction Company and Trinity Universal Insurance Company, answered the appellee's motion for rehearing, and in doing so set out matters and asked for relief, that out of caution, will be treated as a motion for rehearing. The judgment in the trial court awarded Huntington $52,200.00 damages, and deducted as an offset $9,953.33 awarded Inwood for extras under the contract, attorney fees, interest, etc. Prior to trial on the merit the parties made stipulations which included this:

"That the counterclaim of Defendant, Inwood Construction Company, in the amount of $8,042.12, plus interest thereupon at the rate of 6% per annum, from January 1, 1961 is just and proper, and will either be off-set against Plaintiff's claim, or recovered by Defendant, depending upon whether or not Plaintiff is awarded a recovery in Plaintiff's action against Defendant, and if so, depending upon the amount of any such judgment;"

■ The stipulation appears to contemplate an uncontested judgment on the cross-action in the event judgment was rendered in the damage suit. It does not provide that judgment would be entered independent of a disposition of the original suit. Reversal for a new trial of the original suit does not impair the stipulation, and a judgment in harmony with the parties' agreement may be entered at the time the damage suit is decided. The appellant's motion for rehearing is overruled.