HUNTINGTON CORPORATION, Appellant,

v.

INWOOD CONSTRUCTION COMPANY and Trinity Universal Insurance Company, Appellees.

No. 17679.

Court of Civil Appeals of Texas, Dallas.

Oct. 29, 1971.

Rehearing Denied Nov. 19, 1971.

Arch A. Beasley, Biggers, Baker, Lloyd, Stephenson, Biggers & Beasley, Dallas, for appellant.

Edward C. Fritz, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

This suit was originally filed in 1960 by Huntington Corporation against Inwood Construction Company and Trinity Universal Insurance Company in which Huntington sought damages against Inwood Construction Company arising from a breach of a construction contract. Huntington alleged that Inwood did not perform its contract to provide paved parking areas at Texarkana, Texas and Marshall, Texas in accordance with plans and specifications set forth in the "cost plus" contract between the parties. Upon completion of the paving work Huntington paid Inwood the full consideration due under the contract in the amount of $52,383.86. Credits amounting to $8,042.21 were allowed Inwood by agreement.

This is the third time this case has reached the appellate court. The first appeal was from an order sustaining a plea in abatement which was founded upon an arbitration agreement between the parties. That judgment was reversed by this court. Huntington Corporation v. Inwood Construction Co., et al, 348 S.W.2d 442 (Tex. Civ.App., Dallas 1961).

Upon remand the case was tried before a jury and judgment was rendered, based upon the verdict of the jury, in favor of Huntington. This judgment was appealed and submitted to the Texarkana Court of Civil Appeals. That court, in Inwood Construction Co. v. Huntington Corporation, 400 S.W.2d 372 (Tex.Civ.App., Texarkana 1965, writ ref'd n. r. e.), held that the case had been submitted to the jury upon the wrong theory of the measure of damages. The trial court had submitted the case to the jury on "the theory that the appropriate measure of damage is the reasonable cost of remedying defects and omissions in the asphaltic concrete and flexible base so as to bring the paving into conformity with the contractual specifications." The appellate court held that the true measure in this case was the "difference between the value of the building as constructed and its value

had it been constructed in accordance with the contract," and order the cause remanded for another trial.

When the case returned to the trial court Huntington filed its fourth amended original petition in which it alleged a difference in market value between the shopping centers, as constructed and had they been constructed according to the contract, in the amount of $60,000. The case was submitted to the trial court, without a jury, upon a stipulation that the trial court could consider the transcribed evidence adduced at the original trial, plus other evidence submitted to the trial court. At this second trial Huntington produced an expert witness, John Mugno, who testified that the difference in market value, as specified and as delivered, of the shopping center at Texarkana was $20,750. He opined that the difference in value of the Marshall project was $47,250.

The trial court made findings of fact and conclusions of law that (1) the thickness of the flexible base material laid by Inwood at the Marshall site was substantially less than the six inches required by the contract; (2) that in at least a portion of the paved area at the Texarkana site neither the flexible base nor the asphaltic concrete met the specifications of the contract. The court found that the samples taken were not sufficient to indicate how much of the paved area at Texarkana was affected by these defects; (3) that failures in the pavement occurred in a number of areas at both sites as early as July, 1960; (4) that some of these failures were the result of defects mentioned in findings (1) and (2) and others were the result of excessive subsurface moisture and excessive traffic by heavy trucks; (5) that Inwood's performance did not amount to substantial performance of the contract at either site with reference to pavement of the parking areas; (6) that more than half of the paved area at each site was virtually intact after almost ten years of use and that there was no total failure of performance at either site; (7) that Inwood's partial performance resulted in enhancement of the value of the property at both sites; (8) that Huntington is not entitled to recover the total cost of removing and replacing the pavement; (9) that Huntington is entitled to recover the difference between the market value of the shopping center with pavement as specified and the market value of the shopping center with pavement as installed by the defendant in July, 1960; (10) that no market data is available so that the only method of determining the difference in market value is the cost in July, 1960 of the work necessary to bring the pavement to a condition of as nearly as practical equivalent value in terms of serviceability, economy of maintenance and expected life, and if it cannot be made equivalent, then an allowance should be made for increased future maintenance cost discounted for payment and for shortness of expected life; (11) that under the evidence in this case a pavement of substantially equivalent value could have been accomplished in July, 1960 by excavating and replacing the areas of total failure and applying over the whole area, at both sites, a one-inch overlay of asphaltic concrete. That this finding does not include the areas which were replaced by cement concrete as to which "I find that there was no substantial difference in value between the pavement as specified and the pavement installed by defendant"; (12) that there is no evidence in the record upon which to determine the cost of the work necessary to bring the pavement to an equivalent value or is there any evidence of increased maintenance cost or shortened expected life, if remedial work such as the above mentioned had been done. "The only testimony in the record concerning difference of value is that of John Mugno, who based his opinion on the assumption that there was potentially a total failure of the pavement so that a prudent investor would have removed and replaced all the asphaltic concrete and flexible base. Since I do not find such a total failure, and since I find that a pavement of substantially equivalent value could have been accomplished without complete replacement, I cannot give

any weight to Mr. Mugno's opinion concerning the difference in value." (13) That since there was no evidence in the record to establish the difference in value, other than total replacement cost, plaintiff has failed to prove his damages by a preponderance of the evidence; (14) that plaintiff has established a breach of the contract, but has failed to prove the amount of damages; consequently, judgment is rendered for plaintiff for nominal damages only; (15) judgment is rendered for defendant on its counterclaim in the amount stipulated.

Based upon these findings and conclusions the trial court rendered judgment in favor of Huntington and against Inwood for the sum of $10.00 and judgment in favor of Inwood against Huntington in the sum of $8,042, the stipulated offsets.

■ In its first seven points appellant assails the trial court's findings to the effect that there is no evidence to establish the difference in value and that appellant has failed to prove the amount of damages is contrary to the overwhelming weight and preponderance of the evidence. It also attacks the trial court's award of $10.00 as nominal damages as being contrary to the overwhelming weight and preponderance of the evidence and manifestly too small.

In our judicial review of the "insufficient evidence" points here presented we are governed by well established rules which have been announced by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952); "The Question of Insufficient Evidence on Appeal" by Judge W. St. John Garwood, 30 Tex.Law Rev. 803, and " 'No Evidence' and 'Insufficient Evidence' Points of Error", Chief Justice Robert W. Calvert, 38 Tex.Law Rev. 361. We have carefully reviewed this record in the light of these rules and have reached the definite conclusion that we are unable to say that the findings of the trial court under attack relating to the failure of appellant to establish its damages by a preponderance of the evidence are so against the weight and preponderance of the evidence as to compel reversal of the judgment.

In support of these points appellant places great reliance upon such cases as Southwest Battery Corp. v. Owen, 115 S.W. 2d 1097, 131 Tex. 423 (1938); Eastman Kodak Company v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Robey v. Sun Record Company, 242 F.2d 684 (5th Cir. 1957); and St. Louis Southwestern Ry. Co. of Texas v. Kemper, 101 S.W. 813 (Tex.Civ.App., 1907, no writ), which announced the well established rule of law that where the issue of liability is established mere uncertainty as to the amount of damages will not defeat recovery or justify the award of nominal damages. It argues that even though the trial court found that it could not give any weight to the opinion evidence of appellant's only market value witness, Mugno, there was abundant evidence in the record before the court which could be used in arriving at market values. While we do not disagree with appellant as to the soundness of these authorities, we do not believe that they are controlling of the factual situation here presented. The issue here before us is quite simple. Appellant had the burden of proving not only the issue of liability but also the burden of proving the extent of its damages by a preponderance of the evidence. The measure of damages was established as a matter of law by the Texarkana Court of Civil Appeals. Appellant recognized its burden by both pleading the alleged difference in market value as well as offering the opinion of the expert witness, Mugno, at the second trial. Market value has been defined as "the price the property will bring when offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying." State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (Tex. Com.App.1936). Thus, the appellant had the burden of proving by a preponderance of the evidence the difference between the price of the shopping center, with pavement as specified in the con-

**808**

tract, that a willing buyer would pay to a willing seller and the price of the shopping center, with pavement as installed, with the defects that the trial court found, that a willing buyer would pay to a willing seller, neither the buyer nor the seller being under a compulsion to buy or sell. Mugno, appellant's expert witness, rendered an opinion that there was a difference in market value of $20,750 at the Texarkana site and $47,250 at the Marshall site. In reaching this opinion he conceded that he based his estimates on the assumption that there was potentially a total failure of pavement so that a prudent investor would have removed and replaced all the asphaltic concrete and flexible base. The court refused to accept this opinion evidence.

But this was not all of the evidence tendered to the court on the question of measure of damages. By stipulation the parties agreed that all of the testimony which had been introduced in the first trial of the case could be considered by the court in the instant trial. This prior testimony, covering seven volumes of statement of facts, contains a great volume of data and information, both pro and con, which was available to the court in considering the answer to the question of the measure of damages. Even had the trial court accepted the testimony of Mugno the record presented is in direct conflict in that the witness Guisinger, an expert for appellees, testified that after applying the legally sanctioned approaches to estimating market value he concluded that there was no difference in market value of either the Texarkana or Marshall sites. The court obviously gave considerable weight to this opinion testimony.

It would unduly lengthen this opinion to enumerate the various factors related by the host of witnesses who testified in this case which might be considered by the trial court in estimating market value. We have concluded, based upon a review of the record, that it cannot be said that the finding of the trial court relative to the failure of appellant to establish its damages is contrary to the great weight and preponderance of the evidence.

█ We are also unable to agree with appellant's contention that the award of $10.00 as nominal damages is manifestly too small. Appellant relies upon Rule 328, Vernon's Texas Rules of Civil Procedure, which provides that new trials may be granted when the damages are manifestly too small or too large. The basis of this rule is the cardinal principle of law that the injured party, when entitled to recover, shall have adequate compensation for the injuries suffered. Clark v. Spurdis, 258 S.W. 881 (Tex.Civ.App., Beaumont 1924). The award of nominal damages is recognized in law and is proper in a case where a legal right has been invaded but damages are not proved. 17 Tex.Jur.2d, "Damages", § 4, pp. 81–82. The trial court, having found that the appellant failed to bring forward sufficient evidence to establish its damages, was justified in applying the award of nominal damages.

In its Points 8, 9, 10, 11, 12, 13 and 14 appellant attacks the court's various findings, Nos. 2, 4, 8, 9, 10, 11, 12, 13 and 14, as being contrary to the overwhelming weight and preponderance of the evidence. These findings enumerated above, have been carefully analyzed in the light of the record presented and we find that there is some evidence of probative value to sustain each one of them. While there is a conflict in the evidence, we cannot say that the findings are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong.

Appellant's complaint contained in its fifteenth point of error and directed to the trial court's finding of fact No. 4 is likewise without merit and is overruled. This finding has to do with the fact that some of the defects in the paving construction were shown to have been the result of excessive subsurface moisture, which was unanticipated by either party to the contract, as well as by excessive traffic by heavy trucks. The record reveals that

these two causative factors were discovered or developed subsequent to the completion of the contract. It would serve no useful purpose to review the volume of evidence introduced concerning these factors of causation. Neither do we think it necessary to do so for the simple reason that the finding under attack is not the determinative or controlling finding upon which the judgment is based. Again we emphasize that the crucial question in this case is whether appellant assumed its burden of proving its damages which have been found to be the difference in market value of the project as constructed and its value had it been constructed in accordance with the contract. The trial court's finding to the effect that appellant did not meet this burden is supported by the evidence.

We find no reversible error reflected in any of appellant's points of error and they are accordingly overruled.

The judgment of the trial court is affirmed.

GUITTARD, J., disqualified and took no part in disposition of case.