LUTU TENARI, FUIAVAILILI LUAAO LE MCMOORE for himself and for his family, Plaintiffs

v.

TAESALIALI'I FA'ASUKA, UOTI and ALAGA POPOALI'I and their children, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 20-88

June 7, 1989

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, TUIAFONO, Associate Judge.

Counsel: For Plaintiffs, Togiola T.A. Tulafono
For Defendants, Albert Mailo

Plaintiffs seek a permanent injunction to restrain the defendants from erecting a residential structure on a certain plot of communal land located in the village of Utulei. In addition, plaintiff McMoore prays for the eviction of defendants from the site together with damages for the destruction by defendants of a house formerly located on the site and claimed by plaintiffs as theirs.

The central feature of this dispute became largely overshadowed by the development of a collateral dispute about who was the family's senior matai and who held the "pule" over the piece of realty in issue. More specifically, the dispute between Luaao McMoore (hereafter referred to as "McMoore") and Uoti Popoali'i (hereafter referred to as "Popoali'i") over possessory rights to a certain piece of land, became the vehicle for matai rivalry over the right to sign government papers concerning family lands in the village of Utulei. Because of this rivalry, the merits of the actual dispute between McMoore and Popoali'i were simply not open to resolution by the family's matai.

The Court on its own motion joined Chief Lutu as a party plaintiff and Orator Taesaliali'i (hereinafter referred to as "Taesali") as a party defendant. In the usual Samoan family setting, the sa'o of a family and his corresponding pule is well established beyond dispute. Thus, A.S.C.A. § 43.1309 provides that only the sa'o or senior matai may bring injunctive applications in connection

with family land disputes.[1] As pule is disputed
herein, we found joinder, consistent with the
general tenor of that enactment, to be appropriate.
Secondly, it earlier appeared to the Court at the
preliminary proceedings that the underlying turf
dispute between titleholders may have a significant
bearing on the case.

There was no dispute on the evidence regarding
ownership of the parcel of land in question. The
land belongs to a communal family whose members
identify themselves as the Lutu, Afoa, Taesali, and
Tupua family (hereinafter referred to as the
"family"). The members regard their family as
pertaining to the village of Fagatogo which, they
say, includes the sub-village of Utulei as the same
was known in accordance with traditional village
polity.[2] We also gather from the evidence that the
titles Lutu, Afoa, Taesali, and Tupua are distinct
matai titles, with respective lesser matai.
However, for reasons lost to antiquity, the
individual members of the family, as the same is
known today, are all able to claim entitlement to
any of these four major titles. Indeed, when the
members meet as a family, they do so for general
purposes as the Lutu, Afoa, Taesali, and Tupua
family. On the other hand, the family members do
distinguish themselves according to four distinct
clans or "faletama," namely: the Taeletoto clan,
the Pua'a clan, the Loi clan, and the Toalima clan.
In our assessment of the evidence, this
distinguishing aspect has given rise, now and then,
to dissension among the members, although the
family has by and large managed to co-exist in
harmony notwithstanding their multiple matai
allegiances.

### Facts

Plaintiff McMoore is 70 years of age and a
blood member of the Lutu, Afoa, Taesali, and Tupua
family. He testified that he was made a lesser
matai in the family by a former Taesali and that he
has to date served the family and the family matai.

---

[1] Cf. Fairholt v. Aulava, 1 A.S.R.2d 73 (1983).

[2] Today, the village of Utulei, for purposes of
representative districts, is not aligned with the village of
Fagatogo, but with the villages of Fatumafuti and Faga'alu. See
Rev'd Const. of Am. Samoa art. II § 2.

Much of McMoore's life has been spent in the territorial government career service. With regards to the site in question, McMoore testified that the land was designated for his use by the then family matai at a time when the village was relocated inland during the second world war. The armed forces, and then later the territorial government took over the previous village site. Plaintiff further testified that in 1938 he married the sister of Uoti Popoali'i, the defendant herein, and started to build his marital home in 1945, after having leveled and cleared his designated homesite. The home he built was said to be the two story structure which the defendants recently dismantled, thus prompting this suit. By way of supporting proofs, McMoore supplied a copy of a "Building Permit Notice" made out to a Luaao of Utulei for permission to build a non-Samoan construction. This permit was given under the signature of Governor Houser, on 13 December 1945. McMoore also testified that he, his wife, and children alone occupied that house until his marriage ended in divorce.[3] Subsequent to the divorce, he moved in with his sister, Toa, who owned an adjoining home, while his wife and children continued to occupy the marital home. Sometime thereafter, his wife's brother from Ta'u, Manu'a, the defendant Uoti Popoali'i, also began living in the marital home. McMoore said that eventually Popoali'i married and brought his wife into the home. After a time, as McMoore's children had grown and began leaving the marital home, his ex-wife moved off-island while Popoali'i and his family continued to occupy the home to the day it was recently dismantled. McMoore further testified that he was content to allow the defendants to continue living, for the time being, in his home, as after all, his children are related to the defendants. Suit, however, was filed after the defendants had dismantled his home thus attempting to oust him from the site (the sentiment being that over a period of time ouster would be the consequence of Popoali'i's actions because the validity of McMoore's claim would naturally have the tendency to deteriorate from an evidentiary point of view), and after the realization that ongoing negotiations within the family had failed to curtail continuing construction by defendants.

---

[3] The High Court's files reveal the date of divorce as February 15, 1955. Launiu v. Luaao, DR No. 8-1955.

Defendant Popoali'i is 74 years of age. He claims that the house dismantled was built by him and that his sister and her husband McMoore had at one time lived with him. He testified that while he is not a blood member of the Lutu, Afoa, Taesali, and Tupua family, he was given a share in that land allotted by the family to a group of Niuean settlers who were living in Utulei under the auspices of the matai and who continue to be known by the family designation of "Usoali'i." Popoali'i claimed that he early arrived at Utulei before the war as a student sent from Manu'a to complete his schooling in Tutuila. In the course of time he was informally adopted by a Niuean couple and thus he acquired a portion of the Niuean allotment when the village moved inland.[4] Popoali'i said that after a time he returned to Manu'a to cultivate a plantation and left his sister and her family to continue living in the house. In 1950 he married and sometime in 1963 he returned to the house in Utulei with his wife and children after hearing that his sister and husband had marital problems. Popoali'i testified that in time the late Afoa Atapuai bestowed upon him the family's lesser matai title, Ae, and that he has served the family and matai ever since. He has remained in the said house to this day although after a time his sister and her children had moved out. He claims to have made repeated repairs to the house without objection from anyone in the family and states that towards the end of 1988 he decided to tear down the old home and build a new structure. Before doing so he sought permission from the matai of the family and we note that in the process of seeking that permission, some differences arose among the matai.

On the documentary evidence furnished, we find that in 1985 defendant Popoali'i had secured from the government a building permit to build a structure in Utulei on land described as being owned by "Afoa, Lutu." The permit is signed on behalf of the land owner in the following manner: "Pula T. Teofilo for Lutu, Afoa." This permit was

---

[4] According to Popoali'i, McMoore's allotment of land is some 12 to 13 feet away from the site in dispute. His reference is to that same lot containing the house which McMoore had referred to as his sister Toa's home and to which he moved after his divorce.

renewed in early March, 1988 and a few weeks thereafter a separation agreement was sought from the matai.

Popoali'i's daughter testified that she was first sent with a separation agreement form to Lutu who signed the same with the instruction that Taesali should be given the form also for signature and that the other family matai in Utulei should be advised accordingly. After she had taken the form to Taesali, she was told by the latter to procure another new form for his signature alone. It was Taesali's position that Lutu did not have the right to sign for family lands in Utulei. She procured another form which Taesali then signed and which was then filed with the territorial Registrar's office (for the usual posting requirements). Eventually, and towards the end of 1988, Popoali'i dismantled the contested house and commenced rebuilding notwithstanding the continuing objection of McMoore. In turn, this gave rise to individual appeals to the family's different matai, the filing of an action by plaintiff which secured a preliminary injunction to halt the construction, attempts by the family to resolve the matter, and finally the dispute was left to the Court for resolution.

## Discussion

There was solidarity with the testimony given by the senior members of the family to the effect that the site in question was assigned to McMoore by their forefathers (former matai). The general consensus was that Popoali'i came upon the land through his brother-in-law, McMoore, and that Popoali'i has no independent entitlement to the site, save through his brother-in-law. These senior members of the family were strongly united in the view that the rights of McMoore as a member of the family should not be undermined by anyone in favor of a non-family member.

Taesali, on the other hand, claimed that the pule over the family holdings in Utulei had been given over by family tradition to the Afoa and the Taesali. As the Afoa title was presently vacant, Taesali insisted on his sole right to exercise pule. In his judgment, that pule should be used in favor of Popoali'i because the latter is not only a lesser matai of the family but has been faithful and unwavering in his service to the family.

However, Taesali was not clear in the matter of how Popoali'i came upon the land. This lack of knowledge was also significantly noticeable in the testimony of the younger generation of family members who testified on behalf of defendants, and who joined with Taesali on the question of who should have pule.[5]

In contrast to the family testimony which supported McMoore's version of the facts, the Court finds corroborative evidence to be wanting for Popoali'i's version. Furthermore, Popoali'i's evidence of entitlement, which was essentially his own testimony, left much to be desired in the way of credence. His testimony lacked that logical and ordered chronology of occurrences which was obvious in the testimony of McMoore and his son Sione. Rather, Popoali'i struggled with placing certain crucial events unlike the eye witness with an understandable memory lapse but in a manner more consistent with the probability that those events recounted had never in fact occurred.

---

[5] We are quite clear on the testimony that the Taeletoto clan, and to a lesser extent the Loi clan, has been dominant in numbers in Utulei, although some members of the other two clans occupy portions of family land in Utulei as well. The testimony also clearly suggests that members of the Taeletoto and Loi clans have also historically dominated the family titles, Afoa and Taesali. A number of these clan members, including the incumbent Taesali, claim a family tradition whereby the "pule" to family lands in Utulei lies with the Afoa and Taesali titleholders exclusive of the Lutu and Tupua. We again noted with interest the remarkable fact that the proponents of the idea of exclusive pule are a younger generation of matai within the family, differing markedly with the older generation's views on the family's senior matai. In family deliberations, the latter acknowledge in the interests of harmony that the views of the family's four titleholders together with those of the senior members of each of the clans are all important. At the same time, they also maintain that Lutu is the senior matai of the family.

On the other hand, the former maintain that while Lutu is the family's symbolic standard for purposes of village and inter-village polity, they argue that for family purposes, the Afoa is the senior matai. Indeed, to emphasize their position it is further advanced that other lesser matai of the family resident in Utulei are empowered to sign land use permits and separation agreements affecting family lands in the absence of Afoa and Taesali. (This latter contention would justify the fact that in 1985 Popoali'i's building permit was signed by Pula, another lesser matai within the family.)

As will be seen infra, we need not in these proceedings decide the issue of "pule" and we can therefore leave that matter for further family consideration. We are nonetheless moved to caution that the turf concerns by some of the matai must surely be on the level of frivolity when viewed against those higher concerns shown by the family elders for civility and harmony within the family. In the final analysis the ultimate "pule" over titleholders is the family.

The Court is satisfied that the evidence preponderates in favor of McMoore's version of the facts. We necessarily conclude on the evidence as follows: that McMoore is a member of the family; that the piece of property in question was assigned by the family matai to McMoore for his use; that consistent with that assignment, McMoore built a home on the site; that Popoali'i has lately been occupying McMoore's home (and hence the land) with the latter's assent, and without objection from the family; that while Popoali'i was made a lesser matai within the family, he is not a member of the family;[6] and that both parties serve the family matai.

## Conclusions

As we alluded to at the outset, the focus on the intervening question of pule distracted attention from the dispute between McMoore and Popoali'i concerning their respective rights to the land. We now turn to examining those rights.

In Tuanaitau v. Pagofie, the Court said of entitlement rights to lands: "[u]nder Samoan customs (faa-Samoa) . . . communal family land is owned by the Samoan family as such and each member of the family has a right to the use of a portion of the family land." 4 A.S.R. 375, 381 (1963). This right to use family land has also been held to be a proprietary right within the due process clause, Rev'd Const. Am. Samoa art. I § 2, of the territorial constitution. Fairholt v. Aulava, supra, at 74. Vis a vis McMoore and Popoali'i, McMoore as a family member has such a proprietary right to use family land whereas Popoali'i by definition has no such right. This difference in status was exactly the basis of much concern shown on the witness stand by the older members of the family who could not reconcile Taesali's attempted exercise of pule and a family member's rights to family land.

Generally pule is the authority vested in the matai to protect and conserve the family's assets. This authority includes the division, allocation, and reallocation of land to individual family

---

[6] The testimony admits no other definition of family membership other than blood. Notwithstanding the acknowledgement of Popoali'i with matai status, family opinion was that, for purposes of entitlement, Popoali'i was not a member of the family.

members for their use. Numerous cases have likened the pule of the matai to that authority of a trustee because the matai holds for the benefit of the family. In this connection, he has the general ability to administer the family lands but at the same time he has no authority to alienate land in his own right. The courts have not interfered with this administrative authority except in those instances where matai action was found to be arbitrary and capricious. "[P]ule . . . must be used for the benefit of family members . . . justly and fairly. It is not to be used unreasonably and unjustly." Tali v. Tupeona, 4 A.S.R. 199, 206 (1961). See also Fairholt v. Aulava, supra. The law then recognizes that in Samoan custom, the matai has the duty to exercise his pule for the benefit of the family. It thus follows that when a matai undermines the rights of a family member (a beneficiary of family property) to favor a non-family member, he is surely acting inconsistent with, and is in breach of, that duty to exercise his pule for the benefit of the family members.

Having concluded that the land site in question was previously designated by the former family matai for McMoore's use, we hold that a matai decision in favor of Popoali'i would be an improper exercise of pule. Taesali v. Samuela, a case which should be familiar to the family, held that an "assignment [of land] having being made by the then matai [to a family member] in accordance with Samoan customs, [the said assignment] cannot now, after it has been relied upon by [the] family member, . . . be subsequently revoked by the new matai . . . except for good cause." 3 A.S.R. 359 (1958). The Court in that case did not elaborate on cause sufficient to give rise to revocation. However, the Court has held elsewhere that the matai can evict a family member from family lands if such person refuses to serve the matai. Leapaga v. Masalosalo, 4 A.S.R. 868 (1962). Similarly in Fairholt v. Aulava, supra, a family member's rights to the use of family lands was explained to be a conditional entitlement dependent upon that member's continuing service to the matai. In the present matter, however, McMoore continues to serve the matai and family and neither Taesali nor the other defendants have made a showing of cause for the revocation of McMoore's assignment.

As opposed to a revocation situation, there are certain circumstances whereby a family member

can be said to have surrendered his entitlement to previously assigned land by agreement or abandonment. Such surrender operates in favor of a reversion of that estate to the matai for the benefit of the family and such land therefore becoming available for reassignment by the matai. Talagu v. Te'o, 4 A.S.R. 121 (1974).

The evidence before us does not sustain a conclusion of surrender. The testimony of those family members knowledgeable on the circumstances of how Popoali'i came upon the land explained Popoali'i's presence as arising solely through his brother-in-law McMoore's permission to use the latter's house on the land. While acknowledging the retention of McMoore's estate, these same family members, as we have said, firmly deny any independent rights to the land by Popoali'i. The fact that McMoore had assented for many years to the use of his home by his brother-in-law does not, on that ground alone, give rise to a surrender. Additionally, a surrender, as we have seen, operates in favor of a reversion to the matai for the benefit of the family and not in favor of another specific individual whether family member or not. There are simply no grounds presented for the revocation or reallocation of McMoore's estate in the land. The decision by Taesali (assuming that he has the rightful claim to the sole pule in the circumstances) in favor of Popoali'i was premised solely on the basis of Popoali'i's satisfactory record of service and quite without regard to the possibility of underlying vested proprietary rights of a family member to the land-- McMoore also has a satisfactory record of family service. In effect that decision rested on the mistaken assumption that pule may be exercised without limitation. That is not the law in the territory.

As we have already indicated above we need not here decide the issue of "pule." McMoore's entitlement to use the land came about through the duly exercised pule of former matai. That continued right to possession may not be subsequently revoked by successor matai without cause. Taesali v. Samuela supra. Additionally, we do not find anything in the testimony of Chief Lutu indicating a preference between the parties nor an attempt on his part to exercise a pule inconsistent with the result we have reached. We therefore leave the matter of "pule" to further family

consideration. We grant relief accordingly to McMoore.

The other aspect of plaintiff's complaint for consideration is actionable damages. That the wrongful demolition of one's home gives rise to actionable damages is an overstatement of the obvious. We need not however belabor the merits of this claim as the evidence was insufficient on the question of the actual amount of damages McMoore suffered. The testimony in this regard merely leaves us with a picture of a pre-second world war wooden structure on concrete stilts or columns. The bottom floor was not enclosed while the upper floor, according to McMoore, was partitioned only to the extent of providing one bedroom. While both sides alluded vaguely to some repair work having been done, the Court was essentially left without much of an understanding of the structure's condition prior to its being dismantled. The original building would have undergone some forty plus years of wear and tear, and would have accumulated an appropriate degree of deterioration further diminishing its already speculative value. As against this, neither party impressed us with having had the motivation to keep up the house and make improvements. As far as we can gather on the evidence, McMoore's situation kept him out of the home since his separation from his wife. On the other hand, Popoali'i would have had little reason to improve a structure which is not his. We are also unable to give any weight to plaintiff's attempts to show the structure's replacement value. He lacked competence on the subject matter and the figures he gave to the Court had no relation to the condition of the home in 1988. Accordingly not having a basis on which to calculate damages, we conclude that an award of damages in name only may be made in the circumstances. Huntington Corporation v. Inwood Const. Co., 472 S.W.2d 804 (Tex. App. 1971).

On the foregoing, plaintiff shall have judgment as follows:

1. A permanent injunction enjoining defendants and each of them from further construction on the land site in question. Defendants shall vacate the site within such time as defendants may reasonably require to remove any and all of their possessions located on and about the site. Such time shall not exceed a period of 120 days from entry hereof and

90

after which time, anything left by defendant on the land shall be considered abandoned.

2. Damages against defendants in the sum of $10.00 plus Court costs.

It is so Ordered.