ELECTRONIC DATA SYSTEMS CORP., Appellant,

v.

Douglas W. POWELL, Appellee.

No. 18500.

Court of Civil Appeals of Texas, Dallas.

April 11, 1975.

Rehearing Denied May 22, 1975.

**394**

J. Edwin Fleming, E. Eldridge Goins Jr.,
Coke & Coke, Dallas, for appellant.

Royal H. Brin, Jr., Strasburger, Price,
Kelton, Martin & Unis, Dallas, for appellee.

AKIN, Justice.

Appellant Electronic Data Systems (hereinafter called EDS) brought suit to enjoin appellee Douglas W. Powell from violating certain restrictive covenants contained in an employment contract between Powell and EDS. These covenants related to (1) disclosure of EDS business information and secrets; (2) interference in relationships between EDS and its employees; (3) *competition with EDS*; (4) *the use of methods, information or systems developed by EDS or EDS's customers in competition with EDS*; and, (5) contact with EDS's customers.

The district court entered a temporary injunction directing Powell not to interfere with the relationship between EDS and its employees, not to solicit EDS's customers whose contracts had been serviced by Powell, and not to compete with EDS in designated locations by using electronic data processing programs systems developed by EDS not generally known in the data processing industry which are used for performing "the function known as prepayment utilization review in processing health-care claims" (hereinafter referred to as PPUR). EDS appealed the trial court's decree asserting that the relief granted was insufficient to protect its interests. This court affirmed the temporary injunction in Electronic Data Systems Corp. v. Powell, 508 S.W.2d 137 (Tex.Civ.App.—Dallas 1974, no writ), holding that no abuse of discretion was shown.

The case is now before this court on appeal from a permanent injunction entered by the trial court incorporating the identical terms of the temporary injunction. Prior to consideration of EDS's points of error attacking the permanent injunction entered by the trial court, a discussion of the distinction between the review of a temporary injunction and the review of a permanent injunction by an appellate court is necessary. Powell's first counterpoint asserts that the permanent injunction granted by the trial court cannot be disturbed on appeal unless a clear abuse of discretion is shown. We cannot agree.

 In temporary injunction cases, the only question presented is whether or not the trial court abused its discretion in issuing or refusing the injunction. Sun Oil Co. v. Whitaker, 424 S.W.2d 216, 218 (Tex. 1968); West Texas Gulf Pipe Line Co. v. Hardin County, 159 Tex. 374, 321 S.W.2d 576 (1959); and Electronic Data Systems Corp. v. Powell, *supra*. This is true because a temporary injunction is issued to preserve the status quo in regard to the matter in controversy or to prevent irreparable injury to the applicant pending final determination of the case on the merits. The temporary injunction hearing is not a substitute for, nor does it serve the same purpose as hearing on the merits. *See* Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417, 421 (1959).

 Appeals from the issuance or refusal of a permanent injunction, however, are accorded a very different character of appellate review. In reviewing the ruling of a trial court on a permanent injunction, we are not bound by the test of whether or not the trial court abused its discretion. As an appellate court in equity, we must review the contract in question together with all of the evidence to ascertain whether or not the ruling of the trial judge was correct as in any other appellate review. This distinction has been recognized in many cases. Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (1952); Labbe v. Carr, 369 S.W.2d 952 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.); and Electronic Data Systems Corp. v. Powell, *supra*. We conclude, therefore, that although the trial court's fact findings are subject to review only for legal and factual insufficiency of evidence, the court's construction of restrictive covenants and its determination of the proper remedy for breach of such covenants are matters of law for our deci-

sion. In Elcor Chemical Corp. v. Agri-Sul, Inc., 494 S.W.2d 204 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.), this court broadened a permanent injunction granted by the trial court so as to give effect to the contract between the parties. Likewise, this court in Royal Industries, Inc. v. Sturdivant, 497 S.W.2d 479 (Tex.Civ.App.—Dallas 1973, no writ), narrowed and modified the permanent injunction entered by the trial court. We, therefore, overrule Powell's counterpoint.

With this distinction in mind, we have reviewed the facts. The present record contains evidence not before us on the temporary injunction appeal. On that appeal we summarized the evidence as follows:

Appellee Douglas W. Powell worked for [EDS] from May 1970 until August 1972, after which he went to work for Systems Resources, Inc., (hereinafter called SRI), . . . EDS employs systems engineers who write computer programs for its customers. There are five industry groups which EDS serves, the two which are material here being the health care and public utilities industries. Powell worked in the health care area for EDS as a systems engineer on a team which developed a 'system,' or series of computer programs for processing health care claims involving private or non-governmental contracts. The health care industry was subdivided into the private and governmental sectors. The EDS system which Powell helped to develop, referred to as 'Prepayment Utilization Review' or 'PPUR,' competes with the 'Model System,' which was developed by a governmental agency, and which is employed by Powell's present employer, SRI. However, at the time of trial, Powell was working in the public utilities area for SRI, *an area in which EDS did not even have a data processing system when Powell was employed by it.* [Emphasis added.] Electronic Data Systems Corp. v. Powell, *supra.*

At the trial on the merits the evidence showed that SRI was developing a proprietary system for processing regular business health-care claims. The name "health insurance system" (hereinafter referred to as HIS), has been given to this SRI system. This system is not based on the government's "model system." SRI was planning the development of this system before Powell was hired by SRI in August 1972. The HIS system includes automated features and concepts which had been unique to EDS in regular business health-care claims processing system, including PPUR. The record shows conclusively the similarity of features and concepts of the HIS system and EDS National Regular Business System, including features and concepts originally unique to the EDS system. The competition between EDS and SRI in the health-care processing field is direct, widespread and "keen."

Powell made contributions to the development of the HIS system. Prior to Powell's EDS employment, he had no data processing experience. After suit was filed, SRI transferred Powell from the health-care field to the *public utility data processing area.* The application for temporary injunction was heard in May 1973, and a temporary injunction was entered in August 1973. In November 1973, Powell made presentations on the HIS system planned by SRI to both the Kansas City Blue Shield and American Health & Life Insurance Company of Baltimore, Maryland. This activity was in direct competition with EDS. EDS also submitted financial proposals to both companies using the EDS proprietary PPUR system.

A significant addition to the record on the previous appeal is evidence that after the temporary injunction hearing Powell again became active in the health-care field. In September 1973, he was reassigned from the SRI utilities project and again began working full time in Dallas with the primary responsibility of servicing the Kansas

City Blue Shield account. In January 1974, Powell was the first person assigned by SRI to the HIS project. Although Powell denies responsibility for having produced the SRI documentation for PPUR, he does admit that he "shared" information about PPUR with another SRI employee. This activity was in direct violation of Powell's contract with EDS and in violation of the temporary injunction; although the trial court found that Powell did not make any "material" disclosures of information concerning PPUR.

The trial court limited its permanent injunction as it did also its temporary injunction, by defining the word "competing" as:

Conduct by Powell involving the design or use, or providing further information to others on systems for performing in whole or in part, the function known as prepayment utilization review in processing health care claims as that function was designed to be performed by the EDS National Regular Business program on August 15, 1972, where such function designed to be performed by the EDS National Regular Business program exceeds that which is generally accepted and known as the data processing industry for prepayment utilization review program.

Accordingly, the permanent injunction, in effect, restrained Powell from soliciting EDS customers, recruiting EDS employees for a competitor, and from furnishing to others information concerning PPUR, the system which he had helped EDS to develop. The significant question here is whether or not the district court erred in concluding that this relief is all the relief reasonably necessary to protect EDS's business and goodwill. We hold that the permanent injunction granted provides inadequate protection and fails to give effect to the covenant not to compete.

■ The law in Texas governing restrictive covenants in employment contracts is well settled. The test for determining the validity of this covenant is whether the restrictions imposed upon the employee are greater than reasonably necessary to protect the business and goodwill of the employer or impose undue hardships on the employee. Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950, 951 (1960). Such covenants will not be declared wholly void because they are unreasonable as to time, or as to extent of territory covered, or unreasonable as to both time and territory. Instead, a court of equity will enforce the contract by granting an injunction restraining competition for a time and within an area that is reasonable under the circumstances. Justin Belt Co. v. Yost, 502 S.W.2d 681, 685 (Tex.1973). In determining what is a reasonable restraint under the circumstances, the courts will ordinarily consider the question as one of law. Orkin Exterminating Co. v. Wilson, 501 S.W.2d 408, 411 (Tex.Civ.App.—Tyler 1973, writ dism'd); Arrow Chemical Corp. v. Pugh, 490 S.W.2d 628, 633 (Tex.Civ.App.—Dallas 1972, no writ); Toch v. Eric Schuster Corp., 490 S.W.2d 618, 621 (Tex.Civ.App.—Dallas 1972, no writ); Markwardt v. Harrell, 430 S.W.2d 1, 3 (Tex.Civ.App.—Eastland 1968, writ ref'd n. r. e.); Chenault v. Otis Engineering Corp., 423 S.W.2d 377, 384 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.); Barrett v. Curtis, 407 S.W.2d 359, 361 (Tex.Civ.App.—Dallas 1966, no writ); Vaughan v. Kizer, 400 S.W.2d 586, 589 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.); Eubanks v. Puritan Chemical Co., 353 S.W.2d 90, 92 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.); Comer v. Burton-Lingo Co., 58 S.W. 969, 970 (Tex.Civ.App.—1900, no writ); and 14 Williston on Contracts § 1636, at 91 (1972).

■ The permanent injunction granted by the trial court fails to give effect to the covenant not to compete. It grants no more protection than that which EDS is entitled to receive under the common law of trade secrets—the use and disclosure of in-

formation not generally known in data processing. Appellant's business of employing systems engineers to write computer programs for its customers is unique and highly specialized. Its training of Powell included specialized information pertaining to its business as distinguished from general skills and knowledge of the trade. Restraining him from using this information is intrinsically unenforceable so long as he is employed by a competing employer in the health-care field. It would indeed be difficult to determine if Powell were imparting his specialized knowledge to SRI until SRI markets a product resembling closely EDS's system.

The evidence on the merits reveals that Powell, by participating in the servicing of SRI medicare contracts, preparing SRI proposals to process health-care claims for potential EDS customers, including a proposal to incorporate utilization review into the system operated by SRI for Kansas City Blue Shield, and participating in the development and marketing of an SRI computer system for processing regular business health-care claims, has violated his covenant not to compete with EDS. All of these activities were admitted by Powell.

It was clearly established that the methods and techniques developed by EDS have resulted from a significant investment of time and money. Even in the best of good faith, a former technical or "creative" employee such as Powell working for a competitor such as SRI can hardly prevent his knowledge or his former employer's confidential methods from showing up in his work. Blake, *Employee Agreements Not to Compete*, 73 Harv.L.Rev. 625 (1960); Water Services, Inc. v. Tesco Chemicals, Inc., 410 F.2d 163 (5th Cir. 1969). If Powell is permitted to work for SRI in the same area as that in which he was trained by EDS, injunctive relief limited to restraint of imparting such special knowledge as prepayment utilization review, is likely to prove insufficient. The mere rendition of service in the same area would almost necessarily impart such knowledge to some degree in his subsequent employment. Powell cannot be loyal both to his promise to his former employer, EDS, and to his new obligation to his present employer, SRI. *See* Eastman Kodak Co. v. Powers Film Productions, Inc., 189 App.Div. 556, 561–62, 179 N.Y.S. 325, 330 (1919). In these circumstances, the most effective protective device is to restrain Powell from working in the same computer field in which he was associated while employed by EDS.

■ EDS also argues that the confidential information and trade secrets of EDS cannot effectively be protected by permitting Powell to continue employment with SRI in the health-care field of data processing. We agree. The record conclusively shows that SRI and Powell failed to disclose at the temporary injunction hearing that Powell was working in the health-care area. If Powell is permitted to continue in the employment of SRI in the health-care field, there is no way to protect EDS's business and goodwill. Powell has disregarded his covenant not to compete since pursuing SRI employment. The evidence shows that Powell is assisting SRI to develop a system incorporating features previously unique to EDS. Both Powell and his SRI supervisor testified that Powell is expected to do anything that needs to be done to help SRI. Powell testified: "[D]ue to the size and nature of SRI, that it's difficult to assign anyone to a project and that be their only work at that time; that an individual has a background in a given area we call upon from time to time to work in that area even though that is not the primary responsibility." This is confirmed by Powell's admission that he "shared" information about PPUR with SRI. Indeed, Powell was part of the SRI–HIS team and has made sales representations describing the HIS system in direct competition to EDS. He has been involved with selecting new personnel for employment on the HIS team and has

shared his knowledge with them. Powell has furthermore violated his employment contract with EDS by even recruiting an EDS employee to work for SRI in the HIS program development. The conclusion is inescapable that Powell is totally involved in the development of the SRI–HIS system. Powell cannot help but utilize information from EDS's health-care programs and data systems if permitted to continue in the SRI–HIS systems development effort which parallels EDS's PPUR system. Throughout Powell's employment with SRI, Powell has been actively assisting SRI in the health-care area of data processing in direct competition with EDS, except for a brief period of time after this action was filed. It was only then that Powell was reassigned by SRI to the public utilities field. In view, however, of Powell's above quoted testimony, it is reasonable to conclude that even then Powell was giving assistance to SRI in the health-care area. Mr. Justice Bateman, speaking for this court, in the appeal of the temporary injunction, placed much emphasis on the fact that Powell was working in the public utilities area and not the health-care area. The majority of this court concludes, therefore, that the only effective relief for EDS is to restrain Powell from working in the health-care field for SRI or any other employer that competes with EDS.

Accordingly, we reform the judgment of the district court and add to the definition of "competing" used in the judgment as follows:

> Participating, directly or indirectly, individually or as an employee, partner or officer of any person, firm or corporation in any activity involving the development, sale or operation of electronic data systems for processing health care claims; such shall include working for SRI in the health-care area of data processing.

This restraint will be subject to the restriction of three years from August 1972, and two hundred miles from any EDS installation, as provided in the trial court's judgment.

■ EDS also contends that the district court erred in finding that any further restraint, other than that granted, would impose upon Powell undue hardship and would be against public policy. We agree. This finding is unsupported in the evidence. In Orkin Exterminating Co. v. Wilson, 501 S.W.2d 408, 411–12 (Tex.Civ.App.—Tyler 1973, writ dism'd), the court stated that "the only hardship that would be suffered by appellees by the enforcement of the restrictive covenant would be that they be required to find other employment in different type businesses." The court found this to be insufficient to prevent enforcement of a covenant not to compete. Here, Powell would not be required to enter a *different type* of business, as in *Wilson*, but will be required to work in a different *area* of the electronic data processing business. The record here discloses that the health-care area of electronic data processing is but a small part of the total field of electronic data processing services.

My learned colleagues are of the opinion that the injunctive relief here granted is all that is reasonably necessary to protect EDS and its business. I respectfully disagree. In order to give EDS effective injunctive relief reasonably necessary to protect its business pursuant to its contract with Powell, I would broaden the injunctive relief to enjoin Powell from working in any capacity for SRI or any other EDS competitor.

Judgment modified and affirmed in part, and reversed and rendered as to costs, all of which, both in the trial court and here, are assessed against Powell.