**WEED EATER, INC., Appellant,**

v.

**Thomas W. DOWLING, Jr., Appellee.**

**No. 17103.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 9, 1978.

Rehearing Denied March 9, 1978.

Kronzer, Abraham & Watkins, Michol O'Connor, Houston, for appellant.

Soffar & Levit, William D. Soffar, Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from an order denying a temporary injunction. Weed Eater, Inc., sued Thomas W. Dowling to enforce the provisions of an employment agreement containing a covenant not to compete and a covenant against the disclosure of trade secrets or confidential information. The trial court enjoined Dowling from revealing trade secrets or confidential information, but refused to enforce the covenant not to compete.

Thomas W. Dowling, Jr., was employed by Weed Eater, Inc., as vice president of manufacturing. While so employed, he designed and organized an assembly line for the production of a string line trimmer. He was included in all company meetings and was on the list of vice presidents who received confidential information. He had access to all trade secrets and confidential information including new product plans, market forecast, testing methods and results, market strategy, sales prices, performance specifications for components, and the confidential list of component vendors.

All employees were required to sign nondisclosure agreements. The company maintains a security system utilizing guards, employee badges, sign-in procedures, television monitors, restricted areas, and censor devices. Visitors are required to wear a special badge and to be escorted at all times by an employee.

About a year after Weed Eater, Inc., hired Dowling, Emerson Electric Company acquired Weed Eater, Inc., as a subsidiary. Shortly after the acquisition, Emerson presented all Weed Eater vice presidents with a new employment contract. Dowling signed such a contract on March 2, 1977. On October 21, 1977, Dowling resigned and went to work in California for Hawaiian Motor Company as its director of manufacturing.

For some time prior to that date, Hawaiian Motor Company had been purchasing from Weed Eater a flexible line trimmer "head" which it used in manufacturing a flexible line trimmer. Dowling's employment with Hawaiian Motor Company would place him in control of the assembly line required to manufacture the Hawaiian Motor Company's trimmer heads.

By his contract with Weed Eater, Dowling agreed that he would not directly or indirectly use for himself or disclose to any party other than Emerson any secret or confidential information or data regarding the business of Emerson or any secret or confidential information or data regarding the cost, uses, methods, applications or customers, trade accounts, or suppliers of products made, produced or sold by Emerson or its subsidiaries, or regarding any secret or confidential apparatus, process, system, manufacturing or other method at any time used, developed or investigated by or for Emerson or its subsidiaries.

The agreement provided that for a period of one year following any termination of employment by Emerson or a subsidiary, the employee would not engage in or enter the employ of or have any interest in, directly or indirectly, any other person, firm, corporation or other entity engaged in activities relating to lawn and garden care

and the contract specifically provided that the restriction would only be applicable with respect to the manufacturing and sales areas in which Emerson or its subsidiaries shall conduct business operations during Dowling's employment by Emerson.

After an evidentiary hearing, the trial court entered an order reciting that Weed Eater was entitled to a temporary injunction "because the plaintiff has various proprietary and trade secret information which has been disclosed to defendant in confidence and because the defendant was employed by the plaintiff in a fiduciary relationship as vice president of manufacturing under an employment agreement which the defendant has threatened to breach by attempting to take employment with a competitor of plaintiff." The order then enjoined Dowling from disclosing to any third party any confidential or secret information of plaintiff relating to new product development, *layout and design of the assembly line for flexible line trimming devices,* marketing strategy and forecasts, product specifications, performance specifications, testing equipment, testing procedures, vendor identity,.past proposed product design, proposed but unadopted product components and/or designs, *and past assembly line modifications and refinements.*

It is clear from the evidence that Dowling was fully informed as to Weed Eater's new product development, layout and design of the assembly line for flexible line trimming devices and all of the other matters mentioned in the trial court's order. Dowling, however, testified that he knew of no confidential or secret information relating to these matters.

 In reaching a decision on the issues presented by this case, we will apply certain well established general rules of law. The trial court has broad discretion in determining whether or not to issue a temporary injunction, and his judgment will not be overturned unless the record discloses a clear abuse of discretion. However, it is an abuse of discretion where the trial court makes an erroneous application of the law to undisputed facts. *City of Spring Valley v. Southwestern Bell Telephone Co.,* 484 S.W.2d 579 (Tex.1972).

 It is well settled that injunctive relief may be granted when one breaches his confidential relationship in order to unfairly use a trade secret. In the area of confidential relationship such as between employer and employee, the injured party is not required to rely upon an express agreement to hold the trade secret in confidence. *Hyde Corporation v. Huffines,* 158 Tex. 566, 314 S.W.2d 763 (1958); *Thermotics, Inc. v. Bat-Jac Tool Co., Inc.,* 541 S.W.2d 255 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ history).

 Where an employee will acquire trade secrets by virtue of his employment, the law permits greater restrictions to be imposed on the employee than in other contracts of employment. 14 Williston on Contracts § 1643 (3rd edition, 1972).

 Confidential business information is not given protection merely as a reward to its accumulator. The courts condemn the employment of improper means to procure trade secrets. The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means. An injunction to prevent one from making use of trade secrets acquired in a confidential relationship such as that of the employer and employee relationship does not run counter to a public policy which discourages contracts which tend to lessen competition. *K and G Oil Tool and Service Company v. G and G Fishing Tool Service,* 314 S.W.2d 782 (Tex.1958).

 A covenant by an employee not to compete with his employer for a period of time after the termination of the employment will be enforced if the restraint placed upon the employee is necessary for the protection of the business or the good will of the employer, and the restraint on the employee is not unduly onerous.

The trial court found that Weed Eater disclosed to Thomas W. Dowling various

proprietary and trade secret information in confidence. He was enjoined from disclosing to any third party, confidential or secret information with relation to a number of specific matters including the layout and design of an assembly line for flexible line trimming devices, and past assembly line modifications and refinements. He was not specifically enjoined from using such information in his employment as director of manufacturing for a company which proposed to compete directly with Weed Eater.

Since the trial court enjoined Dowling from revealing to third parties information relating to the matters above set out, the court necessarily found that Dowling had received confidential information with respect to these matters as a result of his employment by Weed Eater. Dowling has been employed by Hawaiian Motor Company to supervise the production of a device which it formerly purchased from Weed Eater. He set up the assembly line by which the product was produced by Weed Eater. Even in the best of good faith, Dowling can hardly prevent his knowledge of his former employer's confidential methods from showing up in his work. The only effective relief for Weed Eater is to restrain Dowling from working for Hawaiian Motor Company in any capacity related to the manufacture by Hawaiian Motor Company of a flexible line trimming device. *Electronic Data Systems Corp. v. Powell*, 524 S.W.2d 393 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.); *Grace v. Orkin Exterminating Co.*, 255 S.W.2d 279 (Tex.Civ.App.—Beaumont 1953, writ ref'd n. r. e.).

The contract between Dowling and Weed Eater provides for a contract not to compete during the period of one year from the date of termination of employment. The agreement is unrestricted as to area. The period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement. There is testimony that there are some 18 firms engaged in the manufacture of flexible line trimmers and 2 foreign corporations engaged in this business. The evidence establishes that it is a highly competitive business and that the devices manufactured by Weed Eater are sold in all parts of the United States. It is clear that Dowling's experience gained by setting up Weed Eater's assembly line and by observing it in operation for more than a year would enable Hawaiian Motor Company to set up an efficient assembly line immediately. As a result, that company would become more competitive in a shorter period of time than would likely be the case without the services of Mr. Dowling.

The enforcement of this covenant will restrict Dowling's ability to work only in employment closely related to his field of activity as an employee of Weed Eater. The covenant is not unreasonable as to time or, under the circumstances, area. The evidence establishes that there is imminent danger of irreparable injury to Weed Eater's business. *Electronic Data Systems Corp. v. Powell,* supra; *Continental Group, Inc. v. Kinsley,* 422 F.Supp. 838 (D.Conn. 1976); *Auto Club Affiliates, Inc. v. Donahey,* 281 So.2d 239 (Fla.Ct.App.1973); *World Wide Pharmacal Distributing Co. v. Kolkey,* 125 N.E.2d 309 (Ill.Ct.App.1955).

The trial court abused its discretion in failing to include in the injunction order a provision restraining Thomas W. Dowling, Jr., from continuing in the employment of Hawaiian Motor Company so long as his duties include activities related to developing, manufacturing and marketing lawn and garden trimmers, lawnmowers and similar products. The order will be modified to include this additional restraint.

As thus modified, the judgment of the trial court is affirmed.