**DIESEL INJECTION SALES & SERVICES, INC., Appellant,**

**v.**

**Kevin RENFRO, et al., Appellee.**

**No. 13–82–234–CV.**

Court of Appeals of Texas, Corpus Christi.

June 23, 1983.

Rehearing Denied Sept. 8, 1983.

Second Rehearing Denied Sept. 15, 1983.

Andrew J. Lehrman, Sorrell, Anderson & Sorrell, Corpus Christi, for appellant.

Ron Barroso, Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a judgment denying a permanent injunction and damages based on a violation of a noncompetition agreement. Appellant, Diesel Injection

Sales & Service, Inc. (Diesel), brought suit against appellees, Kevin Renfro, John Way, Hector Gonzalez and Steve Hudson for breach of their employment contracts. Diesel also sought damages against Schwing Diesel Company (Schwing) for intentional interference with contractual relationships and slander. After a bench trial, the trial court entered a take nothing judgment for plaintiff. We affirm.

This case has been before us on two prior occasions on appeal from denials of temporary injunctions. *Diesel Injection Sales and Service, Inc. v. Gonzalez*, 631 S.W.2d 193 (Tex.Civ.App.—Corpus Christi 1982, no writ), and *Diesel Injection Sales and Service, Inc. v. Renfro*, 619 S.W.2d 20 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.). We affirmed the trial court's denial of a temporary injunction against the defendants in both cases.

### FACTS

Diesel and Schwing are in the specialized business of diesel engine repair as well as sales of diesel engine parts. They are also in direct competition with each other in Nueces County. Though appellees Renfro, Gonzalez, Way and Hudson signed Employment Agreements with Diesel which contained covenants not to engage in the diesel fuel injection business for a period of two years following their termination of employment, they left Diesel to work for Schwing.[1] Appellees were untrained when they first went to work for Diesel. They received on the job training and also attended various field schools provided by the diesel manufacturers at the expense of Diesel. Nonetheless, they were still uncertified "bench" mechanics primarily engaged in the repairing and overhauling of diesel engines which included diesel fuel injection systems.

Diesel brought suit to enforce the non-competition covenants, seeking an injunction and damages against appellees. The petition alleged, in part, that Renfro had access to various trade secrets, customer list and familiarity with methods, procedures

and techniques used by Diesel, and due to Diesel having trained appellees and due to the highly competitive nature of the business, an injunction was necessary to protect Diesel's business and goodwill. The petition also alleged that Schwing intentionally interfered with the contractual relationships between Diesel and its employees and that Schwing had slandered Diesel. As to these allegations, Diesel prayed for exemplary damages. The trial court denied all relief sought and filed findings of fact and conclusions of law. Some of the findings of fact are:

"17. The Defendants Renfro, Way, Gonzales and Hudson are mechanics who had a minimum of contact and exposure to customers of Plaintiff; the nature of the work performed by the Defendants Renfro, Gonzales, Way and Hudson minimized said contract and exposure.

18. The Defendants Renfro, Gonzales, Way or Hudson, in their capacity with both Plaintiff and Defendant Schwing, were not salesmen, did not call on customers nor were they in any significant manner involved with customers.

19. The methods used by Defendants Renfro, Gonzales, Way and Hudson in their work with Plaintiff did not involve trade secrets.

20. No trade secrets or secret techniques exist in the diesel pump repair business that plaintiff and Defendants are both involved in.

21. The methods used by both Defendants and Plaintiff to repair diesel pumps were matters of general knowledge, generally available in the diesel repair business.

22. The Defendants Renfro, Gonzales, Way, and Hudson did not divert any customers from the Plaintiff when they left Plaintiff's employment and began working for Defendant Schwing.

23. The Defendant Schwing did not acquire any new work techniques, customers or customer contacts as a result of his

1. Hudson was fired by Diesel. Thereafter, he     was employed by Schwing.

(sic) employment of the Defendant Renfro.

24. The Plaintiff did not lose any customers or business as a direct result of Defendant Renfro's employment with Defendant Schwing.

25. The Defendants Renfro, Gonzales, Way and Hudson acted on their own initiative in seeking employment at Schwing Diesel Co., Inc.

26. When Defendants Renfro, Gonzales, Way and Hudson went to work for Defendant Schwing, they did not take with them Plaintiff's customers, customer lists, pricing list, nor any other such knowledge that Schwing did not already have."

Some of the conclusions of law are:

"1. The covenant not to compete used by Plaintiff in his employment contracts with Defendants Renfro, Gonzales, Way and Hudson was not reasonably incident and essential to the protection of Plaintiff's business or goodwill and the employment of said Defendants by Defendant Schwing did not pose a threat to Plaintiff nor afford a basis of injunctive relief.

2. The covenant not to compete was in restraint of trade and was unreasonable as it was greater than required for the protection of Plaintiff's business and goodwill.

4. Plaintiff failed to prove any present damages or the likelihood of any impending irreparable injuries as a proximate cause of Defendant Renfro, Gonzales, Way or Hudson's employment with Defendant Schwing.

7. The injunction is not necessary to protect the Plaintiff's business or goodwill.

11. There was no evidence to conclusively establish that any decline of Plaintiff's business could be proximately attributable to the hiring of Defendants Renfro, Gonzales, Way and Hudson by Schwing."

In forty-seven points of error, appellant attacks the legal and factual sufficiency of the evidence to support the judgment.

ISSUES

The main issues in this appeal are: 1) the enforceability of the restrictive covenant; and 2) whether the record supports a judgment on the theory of interference with contractual relations and slander.

■ Prior to a discussion of the issues and the evidence, it is necessary to keep in mind the distinction between the standard of appellate review of a temporary injunction and a permanent injunction. In temporary injunction cases, the only question presented is whether the trial court abused its discretion in issuing or refusing the injunction. *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968); *Diesel Injection Sales & Service v. Renfro,* supra. This is true because a temporary injunction is issued to preserve the status quo in regard to the matter in controversy or to prevent irreparable injury to the applicant pending final determination of the case on the merits. The temporary injunction hearing is not a substitute for, nor does it serve the same purpose as a hearing on the merits. *Electronic Data Systems Corp. v. Powell,* 524 S.W.2d 393 (Tex.Civ.App.—Dallas 1975 writ ref'd n.r.e.). See *Southwest Weather Research, Inc. v. Jones,* 160 Tex. 104, 327 S.W.2d 417, 421 (1959).

■ In reviewing the ruling of a trial court on a permanent injunction, we are not bound by the familiar test of whether the trial court abused its discretion.

[A]s an appellate court in equity, we must review the contract in question together with all of the evidence to ascertain whether or not the ruling of the trial judge was correct as in any other appellate review ... although the trial court's fact findings are subject to review only for legal and factual insufficiency of evidence, the court's construction of restrictive covenants and its determination of the proper remedy for breach of such covenants are matters of law for our decision. *Electronic Data Systems Corp. v. Powell,* supra, 524 S.W.2d at 395.

## RESTRICTIVE COVENANT

■ The law in Texas governing restrictive covenants in employment contracts was established by the Supreme Court in *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 951 (1960):

> "An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable. Where the public interest is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer." 340 S.W.2d at 951. See also *Matlock v. Data Processing Sec., Inc.,* 618 S.W.2d 327 (Tex.1981).

Such covenants will not be declared wholly void because they are unreasonable as to time, or as to the extent of territory covered, or unreasonable as to both time and territory. Instead, a court of equity will enforce the contract by granting an injunction restraining competition for a time and within an area that is reasonable under the circumstances. *Justin Belt Co., Inc. v. Yost,* 502 S.W.2d 681, 685 (Tex.1973). In determining what is a reasonable restraint under the circumstances, the courts will ordinarily consider the question as one of law. *Orkin Exterminating Co., Inc. v. Wilson,* 501 S.W.2d 408, 411 (Tex.Civ.App.—Tyler 1973, writ dism'd); *Chenault v. Otis Engineering Corp.,* 423 S.W.2d 377, 384 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.).

■ With the above standards in mind, a review of the evidence shows that this is not a case where the terminating employees had extended contact with the public, nor did the employees go out and solicit customers of their former employer, nor did they take trade secrets from their employer and use them in direct competition. (In fact, no such trade secrets existed.) Nor is this a case where the employees possessed unique or extraordinary skill which made them irreplaceable. Thus, we are left with a situation where the terminating employees were trained at appellant's expense in a competitive business and these facts, standing alone, are not sufficient justification for enforcement of the restrictive covenant. *Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657, 662 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); *Kidde Sales & Service, Inc. v. Peairson,* 493 S.W.2d 326 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); *Grace v. Orkin Exterminating Co.,* 255 S.W.2d 279 (Tex.Civ.App.—Beaumont 1953, writ ref'd n.r.e.).

Our research of the opinions of the Courts that have upheld non-competition restrictive covenants disclosed that the elements which were found to support the enforcement of the restrictive covenant were not found to exist in our case. Specifically, the enforcement of the restrictive covenant has always been predicated on a finding that the party to be bound by the covenant had direct contact with customers of the party seeking to enforce the covenant or was in possession of trade secrets unique to the business of the party seeking to enforce the covenant or some other confidential information of the previous employer. For examples of permanent injunction cases, see *Weatherford Oil Tool v. Campbell,* supra; *Professional Beauty Products, Inc. v. Derington,* 513 S.W.2d 236 (Tex.Civ. App.—El Paso 1974, writ ref'd n.r.e.); *Chenault v. Otis Engineering Corp.,* supra; *Holiday Hill Stone Products, Inc. v. Peek,* 387 S.W.2d 731 (Tex.Civ.App.—San Antonio 1965, no writ). For cases concerning temporary injunctions, see *Madlock v. Data Processing Security, Inc.,* supra; *Pitts v. Ashcraft,* 586 S.W.2d 685 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Rimes v. Club Corp. of America,* 542 S.W.2d 909 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.).

Weighing the competing interest of the employer, employee and the public, the trial court found that the covenant not to compete was unreasonable as it was not necessary to protect appellant's business and goodwill. This conclusion is supported by

the record and we concur with the trial court's decision on the matter. Appellant's points of error one through six are overruled.

## CONTRACTUAL INTERFERENCE

In points of error seven through ten, appellant attacks the trial court's failure to find that Schwing intentionally interfered with the contractual relationship between Diesel and its employees. Generally, in order to maintain an action for contractual interference, it must be established that (1) there was a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred. *Armendariz v. Mora,* 553 S.W.2d 400 (Tex.Civ. App.—El Paso 1977, writ ref'd n.r.e.).

It was incumbent upon Diesel to demonstrate that Schwing actually caused or brought about the interference. *Arabesque Studios, Inc. v. Academy of Fine Arts, Int'l., Inc.,* 529 S.W.2d 564, 568 (Tex. Civ.App.—Dallas 1975, no writ). In our case, the trial court made a finding of fact that Renfro, Gonzalez, Way and Hudson acted on their own initiative in seeking employment at Schwing. The court also concluded that Schwing's conduct was not the proximate cause of the breach of relationship between appellant and his employees. This finding and conclusion is supported by the evidence. Each appellee testified that it was he who contacted Schwing about possible employment and not vice versa. As was held in *Arabesque,* supra, it is not enough that the new employer merely reaped the advantages of a broken contract after the contracting party had withdrawn from the commitment on his own volition. We therefore hold that the trial court did not err in failing to find that Schwing intentionally interfered with the contractual relationships between appellant and Renfro, Way, Gonzalez and Hudson. Points of error seven, eight, nine and ten are overruled.

## SLANDER

In points of error eleven through fourteen, appellant contends, through legal and factual sufficiency points, that the trial court erred in failing to find that Schwing slandered Diesel when it purportedly made certain statements to third parties to the effect that Diesel was going out of business and had lost all of its key employees. On cross-examination, the third party to whom the alleged slanderous statement was made was asked whether he had previously testified that Frank Schwing, Sr., had directly indicated that Diesel was going out of business. He responded:

"A. Okay. Evidently I did not, it's not reflected here, but the fact that he no longer had any competition in that area in a roundabout way says the same thing."

Diesel further complains that one of Schwing's salesmen slandered them by communicating to third persons that Schwing had hired all of Diesel's "key people."

To constitute actionable slander, there must be a defamatory statement orally communicated or published without legal excuse. *Glenn v. Gidel,* 496 S.W.2d 692 (Tex.Civ.App.—Amarillo 1973, no writ). *Bayoud v. Sigler,* 555 S.W.2d 913 (Tex.Civ. App.—Dallas 1977, writ dism'd). The communication to a third party must be in such a way that the third party understood the words in a defamatory sense; and evidence that at least one hearer understood the words as defamatory is necessary for there to be an actionable publication as slander. *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814 (Tex.Civ.App.—Tyler 1980, no writ).

The trial court filed a conclusion of law to the effect that Diesel did not sustain proof that Schwing had advised any of Diesel's customers that they were going out of business or had hired away their key employees. Actually, this was a fact finding by the trial court. As such, the finding will not be disturbed unless, in light of all the evidence, the ruling of the trial court was so contrary to the great weight and preponderance of the evidence to be mani-

festly unjust. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We have considered all of the evidence relevant to the slander cause of action and sustain the trial court's judgment in denying relief under that theory. Points of error eleven, twelve, thirteen and fourteen are overruled.

## EXEMPLARY DAMAGES

In points of error nineteen and twenty, appellant complains of the trial court's failure to award exemplary damages for Schwing's conduct in employing various Diesel employees after they terminated their employment with Diesel. Generally, in order to recover exemplary damages, the plaintiff must show that the offending party acted intentionally or willfully, or with a degree of gross negligence which approximates a fixed purpose to bring about the injury of which plaintiff complains. *Bennett v. Howard,* 141 Tex. 101, 170 S.W.2d 709 (1943); *Houston Lighting & Power Company v. Sue,* 644 S.W.2d 835 (Tex.App. —Corpus Christi 1982, writ ref'd n.r.e.). Gross negligence has been defined as the "entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Bennett,* supra, 170 S.W.2d at 713. Schwing's conduct was not of such a nature as would warrant exemplary damages. Points of error nineteen and twenty are overruled.

The points of error we have discussed dispose of the appeal. However, we have considered the remaining points of error, and they are overruled.[2]

The judgment of the trial court is affirmed.

NYE, C.J., dissenting.

NYE, Chief Justice, dissenting.

I respectfully dissent. I would hold that the covenant not to compete, signed by the employees of Diesel Injection, is reasonably necessary for the protection of the business and goodwill of Diesel Injection and, as such, the employees' employment contract is valid and enforceable.

Diesel and Schwing are in the specialized business of diesel engine repair work and are in direct competition with each other in Nueces County. The record will reflect that Diesel and Schwing are the only two businesses in all of Nueces County to offer both an extensive line of diesel related repair products and services. Where the public interest is not directly involved, the test generally stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and goodwill of the employer. *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960).

The question, then, is whether the covenant not to compete, voluntarily signed by the appellees when they went to work for Diesel, imposes upon them any greater restraint than is reasonably necessary to protect the business and goodwill of Diesel. There is no doubt that the covenant is reasonable. The record shows that it is necessary for the protection of the business and goodwill of Diesel. I am of the opinion that it should be enforced.

The majority would have us believe that the above-stated standard applies only where trade secrets exist or where the employee had direct contact with the customers of the party seeking to enforce the covenant. Although those cases are the more common, that does not exclude from consideration other fact situations which otherwise squarely meet the standard as pronounced in the Supreme Court case of *Weatherford,* supra.

Diesel went to considerable expense and trouble to educate and train its mechanics in a highly specialized field. Diesel's reputation for repair and service has as its foundation the skilled mechanics who work un-

---

**2.** We note that appellant's brief contains an excessive number of points of error. See and compare our rules set out in *Continental Oil Co. v. Dobie,* 552 S.W.2d 183, 187 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.).

der their contract. The record reveals that the competition between Diesel and Schwing for diesel engine related repair business is direct, widespread and keen. The employees Renfro, Way, Gonzalez and Hudson were highly trained, skilled diesel engine mechanics employed by a reputable diesel engine repair firm which, by the very nature of its business, has a direct and incontrovertible interest in retaining competent, trained diesel mechanics. Because of the demand for trained diesel engine mechanics in the highly specialized field of diesel engine repair work and the direct effect that the loss of such mechanics will have on the business of Diesel, the covenant not to compete signed by the appellee employees was, in my opinion, reasonably necessary to protect the business and goodwill of Diesel. As such, the employment contract was valid and should be enforced.

The trial court filed a conclusion of law that an injunction against the appellees would create a substantial and unnecessary hardship for the affected employees. If this were true, the contract would be unenforceable. However, the only hardship that would be suffered by the appellees by the enforcement of the restrictive covenant would be that they be required to find other employment in a different type of business. This is true of all restrictive covenants. This type of hardship is insufficient to prevent enforcement of this covenant not to compete. *Orkin Exterminating Co. v. Wilson,* 501 S.W.2d 408 (Tex.Civ.App.—Tyler 1973, writ dism'd). The record before us discloses that appellee Renfro did not even look for employment anywhere else out of Nueces County. Appellee Hudson simply stated that he was not trained to do any other type of work outside the repair of diesel pumps. Appellee Gonzalez stated that he did not know what he would do if an injunction issued. This testimony is insufficient to prevent enforcement of a valid covenant not to compete.

The rule in breach of contract actions is that the mere proof of the making of a contract and breach is all that is necessary to make out a prima facie case for damages. The appellees, by leaving Diesel and working for Diesel's competitor, did hurt the business and goodwill of Diesel. Plaintiffs are entitled to recover at least nominal damages, regardless of whether actual damages were proved. *Houston Pipe Line Company v. Oxy Petroleum, Inc.,* 597 S.W.2d 57 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd); *Huntington Corp. v. Inwood Construction Co.,* 472 S.W.2d 804 (Tex.Civ.App. —Dallas 1971, writ ref'd n.r.e.). The trial court should determine the damages, whatever they may be, arising from the breach on remand.

Accordingly, I would reverse the judgment of the trial court insofar as it denies permanent injunctive relief.[1] I would 1) remand the cause with instructions to issue a permanent injunction ordering appellees to comply with the terms of their employment contracts, and 2) determine the amount of damages that may be recoverable. Compare *Premier Industrial Corp. v. Texas Industrial Fastener Company,* 450 F.2d 444 (5th Cir.1971).

## OPINION ON MOTION FOR REHEARING

GONZALEZ, Justice.

In his motion for rehearing, among other things, appellant asserts that we ignored the "law of the case" as set out in our two prior opinions.

The "law of the case" doctrine is that if an appellate court has passed on a legal question and remanded the case to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case. See *Dessommes v. Dessommes,* 543 S.W.2d 165, 169 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); *Texaco Inc. v. Par-*

---

1. I concur with the majority's disposition of the intentional interference with contractual rela-

tionships and slander issues.

*ker,* 373 S.W.2d 870, 872 (Tex.Civ.App.—El Paso 1964, writ ref'd n.r.e.); 5 AM Jur.2d § 744.

Since neither of our prior opinions decided the issue of the reasonableness of the noncompetition covenant, appellant's assertion is incorrect. The only issue before us on the two prior appeals was the propriety of the denial of the temporary injunctions and our review was limited solely to the issue of abuse of discretion. Our review now was not so restricted. We reviewed the merits of the case as raised by the points of error. See *Electronic Data Systems Corp. v. Powell,* 524 S.W.2d 393 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.).

We adhere to our original disposition. Appellant's motion for rehearing is OVERRULED.

NYE, C.J., dissenting.

NYE, Chief Justice, dissenting.

The appellant's point of error in his motion for rehearing that the majority has ignored the law of the case as set out in two prior opinions is well taken. See: *Diesel Injection Sales & Service, Inc. v. Renfro,* 619 S.W.2d 20 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) and *Diesel Injection Sales & Service, Inc. v. Gonzalez, et al,* 631 S.W.2d 193 (Tex.Civ.App.—Corpus Christi 1982, n.w.h.).

I would grant appellant's motion for rehearing for the reasons set forth in my original dissenting opinion and remand the case to the trial court for a hearing on the merits.