**B. CANTRELL OIL COMPANY, D/B/A Lone Star Propane Company and Eleazar Renteria, Appellants,**

**v.**

**HINO GAS SALES, INC., Appellee.**

**No. 13–87–395–CV.**

Court of Appeals of Texas, Corpus Christi.

June 30, 1988.

Rehearing Denied Aug. 31, 1988.

Jerry L. Stapleton, Stapleton, Whittington & Curtis, Harlingen, Frank Costilla, Costilla & Stapleton, Brownsville, for appellants.

Melchor Chavez, Allison, Chavez and Sweetman, Brownsville, for appellee.

Before BENAVIDES, UTTER and SEERDEN, JJ.

OPINION

BENAVIDES, Justice.

This case involves a covenant not to compete in an employment contract. The trial

court upheld the covenant and entered an order enjoining Eleazar Renteria from working for a competitor of his former employer, Hino Gas Sales, Inc., in Cameron County. The trial court's order also restrained the competitor, the B. Cantrell Oil Company, d/b/a Lone Star Propane Company, from employing Renteria. The court also awarded Hino Gas over $100,000 in actual and punitive damages for appellants' conspiracy to tortiously interfere with the contract. Renteria and Lone Star appeal this order and money judgment.

The trial court made the following fact findings.

In January, 1986, the owner of Hino Gas, Alex Hinojosa, prepared a written contract of employment which Renteria, a long-time employee, signed. The contract was for one year, subject to automatic renewal, and provided for compensation of nearly $20,-000 in salary (a 15% increase), plus 1% of the company's net profits. The contract contained a covenant not to compete clause, which provided that should Renteria's employment terminate for any reason, he would not compete against Hino Gas in Cameron County for eighteen months.

While working for Hino Gas, Renteria contacted representatives of Lone Star in November, 1986, about a managerial position with that company. Lone Star was a new business which planned to compete directly with Hino Gas to provide propane to businesses and individuals in the area. Renteria let Lone Star officials know that he was under a contract with Hino Gas which contained a covenant not to compete. The Lone Star officials did little to investigate the enforceability of the covenant.

Renteria was hired by Lone Star on December 1, 1986. Two weeks later, pursuant to a lawsuit filed by Hino Gas, the trial court issued a temporary restraining order preventing Renteria from working for Lone Star and prohibiting Lone Star from competing with Hino Gas if it employed Renteria. The court's temporary injunction to the same effect followed in January, 1987. The temporary injunction order was not appealed.

On July 29, 1987, after a trial to the court, the trial court entered its final judgment enjoining Renteria until May 31, 1988 (the end of the eighteen-month noncompetition period) from competing with Hino Gas in Cameron County, and enjoining Lone Star from doing business if it employed Renteria during that time. The judgment also awarded damages to Hino Gas against the defendants, jointly and severally, for the sum of $51,282.11 in compensatory damages and $50,000 in punitive damages for conspiring to and tortiously interfering with the contract. Renteria has not worked for Lone Star since December of 1986.

Lone Star's first three points of error and all of Renteria's points complain of the trial court's order enjoining Renteria from working for Lone Star and otherwise holding the covenant not to compete reasonable and enforceable. These points are moot since the injunction expired by its terms on May 31, 1988. However, we will examine the enforceability of the covenant because of the relationship between the covenant's validity and the alleged damages resulting from Lone Star's interference with the non-competition agreement.

The Supreme Court has recently reexamined the law of noncompetition agreements in *Bergman v. Norris of Houston,* 734 S.W.2d 673 (Tex.1987) and *Hill v. Mobile Auto Trim, Inc.,* 725 S.W.2d 168 (Tex. 1987); *see also Travel Masters, Inc. v. Star Tours, Inc.,* 742 S.W.2d 837 (Tex.App.— Dallas 1987, writ dism'd, w.o.j.). The Court noted that, as restraints on trade, covenants not to compete are enforceable only if they are *reasonable,* which is a question of law for the courts to decide. As formulated in *Hill,* a covenant must meet four criteria to be deemed reasonable:

(1) The covenant must be necessary for the protection of the promisee; the promisee must have a legitimate interest in protecting business goodwill or trade secrets;

(2) The covenant must not be oppressive to the promisor; the limitation on his time, territory and activity must be reasonable;

(3) The covenant must not be injurious to the public; it should not prevent competition and deprive the community of needed goods;

(4) The noncompetitive agreement should be enforced only if the promisee gives consideration for something of value; this includes special training or knowledge given by the employer to his or her employee.

*Hill,* 725 S.W.2d at 170–71.

■ A review of the evidence confirms that the covenant not to compete in Renteria's employment contract satisfies this four-part reasonableness test.

First, the covenant was necessary for Hino Gas's protection. Prior to his employment with the company, Renteria knew nothing about the propane business. Ten years later, he had risen to one of the uppermost management positions in the company. Along the way, he learned nearly all aspects of the propane business and Hino Gas's daily operations. Alex Hinojosa, the company's owner, testified that Renteria "knew our habits, our policies, everthing," including confidential information such as marketing strategies and price lists. Obviously, Renteria was in a position to impart damaging information to Hino Gas's competitors.

Second, the covenant is not oppressive to Renteria. The eighteen-month period of noncompetition is reasonable, as is the limitation of its scope to only Cameron County.

In this connection, appellants argue that the covenant is unreasonable since it prevents Renteria from engaging in a "common calling." *See Bergman,* 734 S.W.2d at 674 (barbering is a common calling); *Hill,* 725 S.W.2d at 172 (an individual skilled in auto trim repair is engaged in a common calling).

The Supreme Court has not defined "common calling." In *Travel Masters,* the Dallas Court of Appeals, citing Webster's Dictionary, defined the individual words: "common" means " 'of a usual type or standard; quite usual and average; entirely ordinary and undistinguished.' " "Calling" means " 'the activity in which one customarily engages as a vocation or pro-fession.' " Thus, a person engaged in a "common calling" is one who performs a generic task for a living, one that changes little no matter for whom or where an employee works. *See Travel Masters,* 742 S.W.2d at 840.

■ Appellants attempt to characterize Renteria as a dispatcher and engaged in the common calling of dispatching. However, the evidence reveals that Renteria was much more than merely a dispatcher for Hino Gas, although that was one his duties. His employment contract lists his title as "Manager of Retail Operations," and he was in charge of the retail department of Hino Gas's Harlingen Division. He was the expert on Hino Gas's Mexican market and had frequent contact and business dinners with Mexican and Texas customers. He had authority to buy on consignment and could purchase up to $20,000 in merchandise. He attended seminars and conventions and helped collect on delinquent accounts. He supervised the drivers and engaged in price negotiations. In short, Renteria performed a sophisticated management function for Hino Gas and was not simply a dispatcher whose duties would vary little from business to business.

Third, the covenant is not injurious to the public. Several witnesses testified that the propane business is highly competitive, and that customers were actually paying less for propane after Lone Star began to compete with Hino Gas. Renteria's absence from the business has had no deleterious effect on the market.

Finally, the covenant was supported by consideration. In return for his signing the contract, Hino Gas gave Renteria a 15% pay raise, plus a 1% commission on profits. Although appellants try to characterize the raise as a sham, the trial court disagreed with them and there is ample evidence to support the Court's decision.

While we find that the points of error presented by Renteria and Lone Star's first three points are moot since the injunction expired by its terms on May 31, 1988, at the end of the 18–month period, we hold

that the covenant not to compete was reasonable and enforceable.

■ Appellant Lone Star's remaining six points of error all concern the trial court's holding that Lone Star tortiously interfered with the contractual relationship between Hino Gas and Renteria by hiring Renteria, and that Lone Star and Renteria conspired to so interfere. Lone Star challenges the legal and factual sufficiency of the evidence to support this holding.

The essential elements of a claim for tortious interference with an existing contract have usually been formulated as:

1) a contract existing that was subject to interference;

2) the act of interference was willful and intentional;

3) the intentional act was a proximate cause of the plaintiff's damages; and

4) actual damages or loss occurred.

*Champion v. Wright,* 740 S.W.2d 848, 853 (Tex.App.—San Antonio 1987, writ denied); *Diesel Injection Sales & Services, Inc. v. Renfro,* 656 S.W.2d 568, 573 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

The Supreme Court stated the test somewhat differently in *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105 (Tex.1984); *see also Rural Development, Inc. v. Stone,* 700 S.W.2d 661, 667 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). In *Sakowitz,* the Court held that the plaintiff had to show "(1) that the defendant maliciously interfered with the contractual relationship and (2) without legal justification or excuse." *Id.* 669 S.W.2d at 107. This first element in Sakowitz would seem to encompass the four elements of the test as quoted in *Champion* and *Renfro,* and the arguments on appeal relate to only the four element test. We shall examine the evidence to support those elements.

When reviewing the legal and factual sufficiency of the evidence, we follow the well-established test reiterated in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986).

Applying the evidence to the above four factors, we find sufficient evidence of only the first two.

First, a valid contract existed and, as discussed above, the noncompetition clause was enforceable.

Second, Lone Star Gas's interference with the contract was willful and intentional. It is undisputed that Lone Star officials knew of the covenant not to compete clause in Renteria's contract with Hino Gas when Renteria met with them several times in November of 1986. Lone Star officials did not pursue the issue of the covenant's legality but advised Renteria that the contract was unenforceable and offered him employment in direct violation of the covenant. In fact, immediately after abruptly quitting Hino Gas, Renteria began to work for Lone Star, even though he knew the noncompetition agreement, if valid, precluded his employment. Sufficient evidence exists to show an intentional interference with the contract, as the trial court as fact-finder concluded.

However, there is no evidence to support a finding of proximate cause and damages, the third and fourth elements.

As in any other tort action, there must be a causal link between the conduct complained of and the resulting damages. *Renfro,* 656 S.W.2d at 573.

A plaintiff in a tortious interference action must prove that he or she suffered actual damages as a proximate result of the defendant's conduct. *Hughes v. Houston Northwest Medical Center, Inc.,* 680 S.W.2d 838, 842 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). Although the existence of damages must be established with reasonable certainty, the actual amount need not be certain. *Id.* at 842. Although the action for tortious interference with a contractual relationship sounds in tort, the measure of damages corresponds to a breach of contract action. *Capital Title Co. v. Donaldson,* 739 S.W.2d 384, 391 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Hino Gas tries to show causation by arguing that it was forced to reduce the price of its propane to its customers as a result

of Lone Star's tortious interference and its hiring of Renteria.

Alex Hinojosa, the owner of Hino Gas, testified that Renteria could use the knowledge he had gained while working for Hino Gas to help Lone Star induce Hino Gas's best customers to switch to Lone Star. He admitted to having no proof of any Lone Star conspiracy to hire away his employees, only speculation. He also admitted that anything Renteria knew about Hino Gas was known by Renteria's predecessor at Hino Gas, Wallace Athey, who had retired from Hino Gas and later went to work for Lone Star.

Tony Rodriguez, a vice-president of Hino Gas, testified that he *assumed* and *suspected* that Renteria had taken a list of Hino Gas's customers and prices it charged them when he left Hino Gas for Lone Star. Renteria testified he had easy access to the list but denied that he had taken it to Lone Star, and there is no direct evidence that he did. Rodriguez further testified that he assumed or suspected that Renteria had used the information on the list to contact Hino Gas's customers to try to get their business for Lone Star. Rodriguez acknowledged that competition for business was perfectly natural and proper, but felt that Lone Star's methods were unfair. Rodriguez listed several customers or potential customers Hino Gas had lost to Lone Star, but he did not testify to the value of those accounts.

Agapito Serrato, Jr., an employee of Hino Gas, testified that Renteria had asked him for a route list before he left Hino Gas, but Serrato had refused. He elaborated that Renteria's knowledge of Hino Gas's prices would make it easier for Renteria to negotiate with Hino Gas's customers to switch to Lone Star for their propane. He testified that Renteria had contacted several of Hino Gas's customers after Renteria went to work for Lone Star. However, he did not indicate that Hino Gas lost any of these customers.

Hino Gas presented evidence it had lost $51,282.11 "from December, 1986 (when Lone Star began to compete with Hino Gas) until April, 1987, as a result of "price cuts"

Hino Gas had made to compete with Lone Star. The trial court granted Hino Gas this amount in actual damages. However, there was no showing whatsoever that the tortious interference with Renteria's contract *caused* this price cut. We note that Renteria worked for Lone Star for only two weeks before he was enjoined from working for Lone Star.

As a matter of law, the evidence does not support the award of actual damages. Hino Gas failed to establish a causal link between Lone Star's interference with Renteria's employment contract and any injury it sustained. The fact that Hino Gas cut its prices to remain competitive with a new supplier is simply free enterprise at work, not evidence that Lone Star injured Hino Gas by its interference with Renteria's contract. Whereas it is conceiveable Renteria might have secured a customer list from Hino and used it to Hino Gas's detriment, the mere suspicion of this is no proof that it occurred. Moreover, Alex Hinojosa, the owner of Hino Gas, testified that a retired, former Hino Gas employee, Wallace Athey, was currently working for Lone Star, and that any information Renteria had was also known by Athey, who was Renteria's predecessor at Hino Gas.

In order for Hino Gas to prevail on its theory that it was damaged because of its voluntary price cuts, Hino Gas had to show that the cuts were proximately caused by the tortious interference with the contract. However, Hino Gas offered no evidence of this causal link. There is no evidence that it was the interference with Hino's contractual relationship with Renteria or Renteria's employment or employment activity on behalf of Lone Star that caused Hino's "price-cut damages."

Since there is no evidence of proximate cause, Hino Gas failed to establish a prima facie case. Since the award of actual damages cannot stand, punitive damages cannot be maintained. A plaintiff must first recover actual damages to recover punitives. *Bellefonte Underwriters Insurance Co. v. Brown*, 704 S.W.2d 742, 755 (Tex. 1986).

We sustain Lone Star's last six points of error.

The judgment awarding appellee actual and punitive damages is REVERSED and RENDERED that appellee take nothing from Lone Star. However, since Renteria appealed only the injunction and does not bring a point of error challenging the $51,-283.11 in actual damages awarded against him jointly and severally with Lone Star, that award is enforceable against him. The $50,000 punitive damages award was rendered against Lone Star only, so Hino Gas cannot recover that amount.

The judgment is REVERSED and RENDERED IN PART and AFFIRMED IN PART. Hino Gas is entitled to recover $51,282.11, plus post-judgment interest, from Renteria.